Mr. Shimko, the court owes you an apology for the second case, the case that was taken off Shimko v. Gunther. In our dealing with the last-minute motions to take this case off the calendar for today, we learned that our clerk's office had entered the wrong address for Mr. Gunther. I understand there's still some dispute as to where Mr. Gunther lives and where he can be located. That's not our immediate concern, but it is clear from our clerk's office that we entered the wrong address that was provided to us by his attorney last August and that we had been sending materials to the wrong place. So where he is today, we don't know, but the case has continued. There is at least some element of fault that we apologize for that. No apology necessary, Your Honors. This is the life we've chosen for ourselves. Good morning. I would like to reserve a couple of minutes in rebuttal. May it please the Court, my name is Timothy Shimko and I appear on behalf of the appellants. What the appellants would like the Court to focus on in this case is simply the issue of whether or not there are material facts in dispute. It is our position here that in dismissing appellants' causes of action against appellees Ross and Goldfarb, the district court either resolved disputed facts against the appellants or failed to give the appellants all of the reasonable inferences to be drawn from that evidence to which appellants were entitled as the nonmoving party on defendant's motion for summary judgment. Now, the essence of the appellants' claims below were that the individual defendants, including Messrs. Ross and Goldfarb, had entered into individual contracts to pay appellants for its services to represent them personally in a large number of fraud actions that they knew were about to be filed and, indeed, were subsequently filed. Appellants posed three causes of action or three theories of recovery. One was an action on account, the other was breach of contract, the third was unjust enrichment. The appellee's defendant ---- Mr. Simpkin, if I may, I realize you're a member of the Bar of Ohio, and I'm hoping you can elucidate some things for me and for my colleagues since, as far as I know, none of us has practiced at Ohio. Is it correct that attorneys in Ohio owe a fiduciary obligation to their clients? I believe attorneys owe fiduciary duties to their clients in every jurisdiction around Ohio. Okay. In this case, you allege that you had an individual agreement with individual members of a limited partnership. Is that correct? Number of limited partnerships. There are a number of corporate entities, but two that were involved that were going to be sued. Okay. And did you get waivers of conflict, signed waivers of conflict between these individuals and the partnerships that you represented in which they were members? No, Your Honor, because I saw no conflict in their position. The defense of the corporations was incidental to the defense of the individuals. Okay. I So there was a one-on-one, you know, there was no conflict that I saw existed, Your Honor. I'm a little confused about that. I'm looking now at a, I don't know where this is in the record, but it says from the record, this is Timothy A. Shimko's affidavit in support of plaintiff's motion for summary judgment. Paragraph three, I entered into an agreement with defendants whereby I agreed to provide legal services to the defendant in exchange for legal fees. And then moving, oh, it says in paragraph four, the agreement was made between the individual defendants and me. The agreement was made on a personal and individual basis for each and every defendant. Then as I look at a letter also in the record, and I don't know the exact citation, this is a letter dated April 29th, 2003 to Joel V. Brill, who admittedly is not one of the defendants, one of the parties for the partnership. You said there may, in the second paragraph, there may be settlement strategies that could be affordable, available for you and or CLS and CMS that are different or conflicting and thus conflicts of interest might present itself. Yes, sir. At that point in the, in the, and it had not occurred before. At that point in the litigation, defendants or the plaintiffs in that case had approached me about settlement. And at that point, they did want to treat Mr. Brill and Mr. Ritchie differently from the other four owners. So your, your perspective is that even though each of these entities that you represented is a separate legal entity, that it's okay under the law of Ohio, or at least the state bar rules of Ohio, to represent the entity and the individuals without a signed waiver of conflict? If the attorney reasonably believes, as I did here, Your Honor, that there was no conflict between the parties. However, as soon as I saw that potential rise, and it was as I was leaving, it was as I was leaving this case. I mean, that letter that you quote there was within days of my, of my withdrawal of this case, I indicated to two of the individuals that I was representing, hey, look, you could get a better deal than these guys can, okay? And I can't negotiate that for you. You need your own counsel. But the core of the allegations, and in the excerpt there were some 29 to 30 complaints showing Mr. Goldfarb and Ross charged individually, not in acts in any official capacity, but individually. And these were all fraud cases. Yes, Your Honor. Whether RICO-based or otherwise. Correct, Your Honor. How is there not the potential conflict in any fraud case where you have individuals and claims are made based on individual representations and acts of fraud by individuals? They were all telling the same story, Your Honor. They were, it was a unified defense. They were all pitching this same program. They were all using the same materials. It was all the same evidence against all of them. And they all defended uniformly, saying, no, this did not happen. No, this was all true. No, this was all they were not pointing fingers at each other. They would not point fingers at each other. They have not to this point. Now, when I took a look at that case, Your Honor, I saw that there was no conflict among the positions taken by the individuals and that the corporations, CLS and CMS, were incidental. I mean, this was, you would defend them because those corporations because you were defending these individuals. They didn't care about CMS and CLS. The first time there was any kind of judgment or any kind of problem, they immediately threw CMS and CLS into bankruptcy. Is it your practice to not document attorney fee agreements? No, Your Honor. It's not my practice. You were involved In this case, I would say that the fee agreement, Your Honor, is documented by the fact that they paid my fees under invoices for an entire year without any objection at the rates stated at the time. So there was clearly In other words, you were paid from personal accounts? Personal. I don't know where it was paid from. Well, how could you not know where you were getting the money from? I sent the bills to CMS, Your Honor, but I'm not sure that the checks always came from CMS. All right. But you were billing the corporation. You weren't billing any individual. As my affidavit indicates, Your Honor, I was requested to do that as a matter of convenience to the four individuals because that's where they were doing the cases. Ms. Chimko, you contended that the just that there are material facts in dispute here is inappropriate for summary judgment. And it seems to me that sort of the principal material fact is in the paragraphs that Judge Smith read, which are in paragraphs 3 and 4 of your affidavit, where you dispute that there were no, that the individual, the limited partners did not, that the partners did not engage you as their defense counsel. Now, you are alleging that in those paragraphs that they, that an agreement was made between you and the individual defendant. And it was made on a personal and individual basis with each and every defendant. Now, do you have any evidence to provide to back that up? That is the evidence, Your Honor. Okay. It's your testimony. That's it. I mean, we don't have, we don't have, you haven't provided a place. You haven't provided a time. You haven't provided circumstances. You haven't discussed how people nodded in assent, whether you just said is everybody okay with this and whether people sort of nodded or whether they stayed silent. We have no letters memorializing this. So that's it. In response to the motion for summary judgment, this is all the evidence that you can place into the record. Well, it wasn't all the evidence because certainly at Mr. Gunther's trial, Dr. Gunther's trial, there was a lot of evidence that was passed upon, expounded upon, and clearly there were discussions that were talked about, and clearly there was the, the meeting was dated in the actual trial of Dr. Gunther. And, Your Honor, I would submit to you that those points that you bring out here may go to the weight of the evidence, but certainly my evidence of saying that I had entered into an agreement with all of these individuals is sufficient evidence to contradict theirs when they said I did not. The question sort of comes down, in my view, as to whether this is just a conclusory statement, insufficient to create a genuine issue of material fact. Well, I'd like to court, I'd like to point the Court's attention to this Court's opinion in Trojan v. Picker International, which held, and it's a 1992 case out of this circuit. In its recitation of the facts, the district court appears not to have drawn the necessary inferences in Trojan's favor. It sets forth Picker's facts in support of its motion in some detail. But Trojan's facts in opposition are currently rejected as conclusory allegations. This suggests to us that the district court acted as a fact finder and in proper role on summary judgment. And I would submit that something similar happened here. Though the court did not label any of the evidence of appellant's affidavits as conclusory allegations, it simply seemed to ignore that fact. It ignored the fact that I had entered into private agreements. Now, at the time, that's subject to cross-examination and the court didn't ignore the fact. It set forth in the Court's order. I mean, the fact is set forth. The site to your declaration is set forth in the Court's order. So this isn't a case where the court overlooked something. Well, then I think, then, Your Honor, that it's probably better saying that it misapplied the inferences, did not give me the proper inferences that I was entitled to, or recognized as truly conflicting their evidence, which said, hey, there is a contract. There's no doubt that there's a contract here. These gentlemen do not dispute that there's a contract. They do not dispute I did the work. What they dispute is who the contract is with, with them as individuals or as CMS and CLS. And they provided no evidence, no affidavits, no letters saying that the contract was with CMS or CLS. So normally under Rule 56 discussions or analysis, that would end the discussion. I have said it was with them. They don't deny the contract. They say it was with CMS and CLS. Mr. Schimko, you're asking us to obviously send this back to the district court and go forward with the new, with the trial, basically. I must confess, I'm troubled by this case because you've agreed that every attorney owes a fiduciary obligation to his or her client. That's the highest level of duty that exists under our law. There is a strong presumption that you must act in the best interest of your client, that you must avoid conflicts of interest. As you know, under bankruptcy rules, you would have absolutely no right to collect any fees. And you would have to disgorge those you'd already paid if you had not had a proper waiver of conflict, and in that case, whether the court had approved it. I take judicial notice of the fact that you were involved in a case called Schimko v. I have the state arbitration clause declared unconstitutional by the state supreme court, and it all arose because there was a dispute in the terms of an oral agreement on attorney fees with another lawyer. I'm troubled by the fact that you seem to have a practice of not getting written agreements. You've got oral agreements, but when you get into a, if we send this back, and if your position prevails, can you think of any reason why the lower court should not apply a very high level of responsibility to you in what you did, and perhaps ask that you just gorge fees if, in fact, you have breached that fiduciary responsibility of your clients? If that's the way the facts lay out, and they pled that, Your Honor, but that was not the basis of the lower court's decision. But I would say this. If I, and I'm sorry about my time here, but if I would say this about the Ohio action, it was not the law in Ohio at the time that agreements between co-counsel had to be in writing. I understand. Agreements with clients had to be in writing, and those agreements were in writing. So I was in compliance with Ohio law at that time. But in Ohio law, in Ohio law, you say the agreements with clients did have to be in writing? Did have to be in writing. And there, but they weren't in writing with these clients. I believe there were, Your Honor. There is the evidence, clearly the evidence of the invoices themselves, that for an entire year, paid. But that's a common, that's a common count approach. I'm talking about a written agreement, an attorney fee agreement with clients. There was no such agreement in this case, was there? Not that I know, Your Honor, there is not. There was no written fee agreement, and I did not recall that to be the law in Arizona at the time. And in Ohio, is it sufficient that you simply send bills that would, that constitute the written agreement in Ohio? Up to a point in time, it was, Your Honor. It was. I'm sorry. Up until now. Contingent fees in Ohio had to be in writing. Only recently, within the last year or so, has Ohio changed and said all fee agreements must now be in writing. So, you know, that was not the case at that time, Your Honor. And this was not a contingent fee. It was an hourly fee. But, and I would say this, Your Honor, that there's another point. I mean, I don't know. I don't know what I can ask. The red light's on, and I guess I should ask. Once you finish up, we'll allow you one more thought. Well, then there's the evidence on the general partner, that these gentlemen were general partners. And even if you accept Judge McTone's reasoning that the agreement was not with them individually, these gentlemen admittedly were officers and directors of CMS and CLS. And under Arizona law, the Court held in Kitchell Corporation v. Hermanson, the Court held that a limited partnership is formed by complying with Section 2 of 29302. The management of the business in a limited partnership is denied to the limited partners and is vested almost entirely in the general partners. Now, these gentlemen have indicated that they were officers of that corporation in their affidavits. Are you referring to 29319 now? No. I was referring to 29302 and then turning to 29319, Your Honor. A limited partner will lose his protection as a limited partner if he acts as a general partner and there was an enormous amount of damage. That's half the test. That's half the test. Right. You didn't read the whole statute. What am I missing? I did, Your Honor, but what do you think I'm missing here? Who transact business with a limited partnership reasonably believing, based on the limited partner's conduct, that the limited partner is a general partner. Is a general partner. This is just sort of a bona fide purchaser for value kind of problem. That is one where somebody's been suckered into not understanding who they're dealing with and being led to believe it. You were the counsel for this corporation. How could you not have known the status of these folks? I was their litigation counsel, Your Honor. I was not their general counsel. They had other lawyers for that. You didn't know that you were dealing with limited partners rather than general partners? I thought I was dealing with equal partners, Your Honor. That's not the question, though. The question isn't whether they're equal. No. Limited versus general is the question. No. I had – I guess I knew it was a limited partnership, Your Honor, but I knew that all four of them were general partners acting as general partners. No. Either you knew that they were limited partners or you thought or you knew that they were general partners. But if you knew that they were limited partners, then you don't qualify as I read this statute. Well, let me clarify. I knew the structure of the business, CMS and CLS, were limited partners. I knew that. But what I also knew, Your Honor, was that these four gentlemen, as Judge Matone found when he tried the Gunther case, and I direct the Court to the Gunther opinion where the Court said, Dr. Gunther and his colleagues acted as general partners and found in favor of me on that issue. All right. Assume for a minute that's right, just hypothetically that's correct. I did not know that. What's hard to understand is you enter into a relationship with these gentlemen. You claim there was an oral agreement with each individually because they were concerned about their personal liability here. Oh, yes, Your Honor. And yet you had no concept that they were limited partners in Corf? I know. It's almost beyond belief. They didn't act as limited partners. That's not the question I'm asking, though. That's what I'm asking. No. And I had no belief that they were limited partners. They did not run the business as a limited partnership. So you took on that representation without conflict of interest, waivers and so forth, in a fraud-slash-RICO-type civil cases, without knowing the position of these individuals. Is that what you're saying? Your Honor, of course I knew they called themselves limited partners. I knew that. But I also knew that they acted like general partners. They did not run it as a limited partnership. And 29319 indicates you lose your protection if you get involved. And more importantly, Your Honor ---- No, that's not what it says. That's the first sentence, Mr. Shimko. But that's not the second sentence. The second sentence says only if you reasonably believe that the limited partner is a general partner. And in that case, I would refer you to Judge McTone's opinion in the Gunther case, where he faced that exact issue and found in my favor, saying that I reasonably believed, from the evidence that he saw, I reasonably believed that they were general partners. Judge McTone specifically decided that issue in my favor. But, Mr. Shimko, long before you ever knew Judge McTone existed, you claim that you set up an individual account with each of these people. Why would you have done that? The only reason you would have done that, presumably, is if you thought they weren't general partners. Because if they're general partners, then they would be jointly and severally liable for the obligation. You thought they were limited partners, didn't you, because you went to them individually and asked them to agree to individually hiring you. Isn't that why you did that? First of all, it came to me, Your Honor. Okay. Well, whatever. Okay. And second of all, and second of all, their concern and my concern was not the corporations or the limited partnership. These four men knew that 70 or 80 people, and I settled 30 cases against them. I understand that. They knew that these cases were going to be filed against them as individuals, that they personally committed the fraud. Right. And I would refer the Court, again, I think it's to another 29 to 15. But remember, when this panel looks at this case, we have in our minds the fact that you are a fiduciary. You are a trust officer. If you were a trust officer of a bank and you did this in connection with your clients, I think you might have a little problem. We're wrestling with the problem of a trust officer dealing with people who is basically at the one time telling us you have to ignore the existence of these entities. And yet, as this letter that I read to you makes clear, you knew there was a conflict, at least at that point. When I was withdrawing, that's right. And the reality is that if you want equity, like in a quantum marijuana and just enrichment kind of thing, you must do equity. You can't be in violation of a fiduciary duty and expect any court to give you relief, can you? Except this, Your Honor. The issue of whether or not I have breached my fiduciary duty was not brought to the lower court. It is not before this Court, okay? They haven't argued in this Court. And I would say this, Your Honor. I disagree with you strongly that I have breached any fiduciary duties to these clients. I have. I deny that. I object to it in the sense that this is it. There was no conflict among these four gentlemen. In fact, all four gentlemen testified in the Gunther case in support of Dr. Gunther. I saw no conflict. There may not have been a conflict among them, but there may be a conflict between their interests and the interests of the corporations. I saw none because the corporations were the alter egos of these gentlemen. They ran these corporations as alter egos, Your Honor. These gentlemen were the officers of the corporation. They operated it day to day. They were not limited partners. They ran it as they ran it, you know, and the corporations were just incidental to the defense I was providing to them as individuals. It was a line of defense that I used to defend the individuals. From the very beginning, they were willing to sacrifice those corporations. It was not an issue to them, all right? Even if that's true, I know time is running on. It just seems that even if the clients say we have common interest here, any experienced lawyer seems to me should know in a fraud case when it comes down to it, it's very likely fingers are going to start pointing at some point in the litigation. It didn't happen in this case. It did not happen in this case, Your Honor. Nobody pointed any fingers at anybody else, and it was not anticipated that they would. It was a united defense. Other than you. I'm sorry? Other than you, apparently. Other than you. Pointing fingers at you. Well, once this started, Your Honor, yes, that is so. Okay. All right. I think I understand your position. Thank you, Mr. Shimko. Let's hear from Mr. Goldfarb. Well, that's Mr. Cohen, right? I am Mr. Cohen, Your Honor. Okay. May it please the Court, Roger Cohen, on behalf of Mr. and Mrs. Ross, Mr. Goldfarb has asked to have two minutes set aside for his argument, so I'll try to keep my argument to eight. Your Honor, Your Honors, what I heard from Mr. Shimko is that he's a lawyer, and his argument is astounding. I don't know about Ohio, but Mr. Shimko was admitted pro hoc vice in numerous cases in Arizona, and he subjected himself to the Arizona ethical rules pertaining to attorneys. One of those is Ethical Rule 1.7, which deals with concurrent conflicts of interest, and the comment to ER 1.7 makes clear that what Judge Smith is saying is applicable. In any case of representation of more than one client in litigation, any kind of litigation, there is always a potential conflict. The potential conflict can come up because the attorney is given conflicting directions for settlement. Mr. Woodcock, if Dr. Woodcock wants to settle, Mr. Ross doesn't, Mr. Goldfarb does. There are issues regarding confidential attorney-client privilege. The privilege is waived as among attorneys, as among clients, multiple clients represented by the same attorney. There are potential conflicts regarding payment, which we have here. Mr. Shimko says that Mr. and Mrs. Ross, my clients, are jointly and severally liable for everybody's fees, including fees incurred by Mr. Goldfarb or Dr. Woodcock, which may have had to do with protecting some other individual defendant's personal assets. How can it possibly be said that there is no potential conflict? And what the comment to ER 1.7 makes clear is that the attorney has to disclose and there has to be knowing consent to the multiple representation. And I believe the comment makes clear, or even the rule makes clear, that the client has to be advised in writing. It does not go so far as to require that the client consent to write. But there was nothing like that in this case. Mr. Cullen, the claim, of course, of impugning Mr. Shimko's reputation for having been ill-advised here, perhaps, in the way that he treated his various clients, does that all go away if Mr. Shimko had no agreement of representation with the individuals? Well, if there's no representation with the individuals, then, which there was not, then the contract count goes away and the account, he confuses account stated and open account. But those accounts go away. Then Mr. Shimko would have only represented the two corporate entities. Are there any conflict problems between the two corporate entities? There might have been conflicts between the two corporate entities. But not, but it's not, that's not clear. It's not clear, but it's irrelevant because we're not dealing with defenses by the two corporations, or two unlimited partnerships. I believe, in fact, Your Honor, that, yes, there is always a conflict. One of the companies is a management company, I believe, a general partner. The other is the limited partnership. And there is always a conflict. But are we getting, are we starting to weigh the evidence now at this point? No. Well, Your Honor, what we're talking about here is whether there was unethical conduct, which goes to the issue of the unjust enrichment count. And, of course, the unjust enrichment claim is completely undercut by the section of the restatement, which we referred to. It's everyone agrees, everyone acknowledges that there was a contract with the corporate entities to pay the legal fees. But why don't we go back to the contract account statement for a moment. Certainly, Your Honor. The allegation here is that the district court didn't really consider what Judge Wyvie cited, paragraphs primarily 3, 4, and 5, and, in my view, to a lesser extent, maybe number 9. The district court essentially ended up weighing the evidence. Why don't you give us your take on that as to why the district court was correct? Well, what Rule 56 requires, and the Liberty Lobby case requires, is that when a motion for summary judgment is made, the opposing party may not simply rely on the bare allegations of the cause of action, must come forward with specific facts. Mr. Shimko didn't do that. What his affidavit is, in essence, is simply a parodying of what's in his complaint. I had contracts with the individuals. He doesn't say when the contracts were formed. He doesn't state specifically the terms. He doesn't state how they were formed. He doesn't even state in his affidavit whether the contracts were in writing or oral. Now, he testifies here, or he tries to testify here, that it was something more. But on the record, and again, I guess I do need to go back to this. The record here is not what happened in the Gunther trial. The record is not what Mr. Shimko has testified to or has argued in the course of his argument in this case. The record is what was in front of Judge Martone. And what was in front of Judge Martone was that affidavit. And all the affidavit says is, as the Court made clear, I had contracts. Well, there's not enough substance or specificity in that to even get to the issue of weighing evidence, Your Honor. But sort of playing devil's advocate, you have a lot of individual lawsuits where these individuals are named. Correct, Your Honor. Mr. Shimko in his declaration said that his representation of the corporate entities was secondary to representation of the individuals. And he says he had an agreement with them on an individual and personal basis. And explains that the invoices were directed to Corf for ease of matters, I think he puts it, for ease of billing. I guess what I'm struggling with is trying to get a feel for whether that's enough meat. And obviously you're saying not, but there is a bit of a package there that's put forward. Well, Your Honor, and maybe I hesitate to go here, but maybe the way to think about this is that on the basis of the record presented to the Court in this case, Judge Bartone said this isn't enough. This doesn't get past the threshold issue of Rule 56 because there's nothing sufficiently specific. Now, we don't know what happened in the Gunther trial. The Gunther trial is not part of this record. But what we can assume is that maybe there was a whole lot of other testimony in the Gunther trial. Maybe in the Gunther trial he came forward and he said when and where and how. But we don't get to that in this case because we are reviewing the granting summary judgment. And it's very clear that the record for purposes of an appeal from a summary judgment issued under Rule 56 is what did the district court have in front of it when it was  And that's the issue. And all the facts I just stated were before the district court. But, Your Honor, those aren't facts. And I guess that's the point. Those are conclusions. What Mr. Shimko says is I entered into an agreement with defendants. He doesn't say I entered into an agreement with Richard Ross. He just says generically I entered into an agreement with defendants. He doesn't say when. He doesn't say how. Now, that would suffice for notice pleading. But, again, the requirement on summary judgment, once the moving party comes forward and makes out the prima facie case for there being an absence of material facts, the responding party is required to come forward with specific facts demonstrating that there is a genuine issue requiring a trial on the merits. And Mr. Shimko just didn't do that. He less rested on what's in his affidavit. I entered into an agreement with defendants. The agreement was made between the individual defendants and me. And he never comes forward with anything that remotely demonstrates that there was actually an agreement or that there were facts that a jury could have considered that could have then been properly weighed in deciding the case on the merits. Is it your position that in order to be successful in defending against the motion for summary judgment, that Mr. Shimko would have to allege the four required elements of a contract? Certainly, Your Honor. And he didn't do that from your perspective. He clearly did indicate in paragraph 4 of his affidavit that the agreement was made on a personal individual basis with each and every defendant. So he clearly did identify your client in that sense. But you're saying he had to say basically how the fees were to be calculated, what they are per hour, when the services would be performed, what services are going to be performed, all that sort of thing? Certainly, Your Honor. Why could he have not done that? He had the opportunity to have introduced those facts into the record at the time if they existed. He failed to do so. And needless to say, he is a lawyer. He knows the rules. He's not some lay party that was taken by surprise by this. He's facing a summary judgment by parties that say there are no facts in the record to allow this case to go to trial. The burden shifts to him. And instead of coming forward at that point with the specific facts that the Liberty Lobby case requires, he just stands pat. And that amounts to no more than what the rule specifically prohibits, which is relying on the bare allegations of the complaint. I think that's the way to look at it. What is your position? You heard my comments earlier about the fiduciary obligation that Mr. Shimko had, as every lawyer has to his or her client. What role, if any, does the level of obligation that Mr. Shimko and his clients in the case have on the level of response that was required to the motion for summary judgment, if any? Were there any additional allegations, statements he had to make to get around problems with fiduciary duty? I don't think that the fiduciary duty is material in that sense. I think the breach of fiduciary duty goes to the issue of equity. And as to that point, I think it's very relevant. And your position, your client's position, as I understand it, is that there was no individual contract, certainly with your client. Is that correct? Absolutely, Your Honor. My client specifically denied entering into a contract. And let it be said, Your Honor, that there's one other reason that, and again, I don't want to weigh evidence, but Mr. Shimko, on the eve of withdrawal, asked each of the defendants to personally guarantee the fees. And this is uncontradicted. And Mr. and Mrs. Ross specifically refused to sign a personal guarantee. So that's simply, that's certainly strong evidence that my client did not believe there was a fee agreement. Mr. Shimko's letter doesn't state, as we previously agreed. That's certainly correct, Your Honor. Did Arizona local rules incorporate, for Pro Hoc Vice, incorporate the Arizona State Bar rules on professional conduct? At this time, it requires actually going to the Arizona Supreme Court and paying the same fee. But in any event, when an attorney assumes to practice an Arizona Pro Hoc Vice, he subjects himself to the Arizona ethical rules. And that's set forth in the local rules? I believe that's set forth in the, it's part of the rules of the Supreme Court governing admission Pro Hoc Vice. Does Arizona have a rule on written agreements? At the time, it's similar to Ohio, I believe. A contingency agreement, certain other agreements must be in writing at the time of these transactions. It was not an absolute requirement that all fee agreements be in writing. Your Honor, I think I've overstayed my welcome, and I did want to leave some time for Mr. Goldfarb. I just want to conclude by saying that the district court properly applied the standards of Rule 56, ask that the judgment of dismissal of Mr. and Mrs. Ross be affirmed. Thank you, Your Honor. Thank you, Mr. Cohen. Mr. Goldfarb, you have two minutes. Good morning. I'm David Goldfarb. First, let me say that the facts and record, as to me, are very different than any of the other limited partners in the court of business. I never met with Mr. Shimko individually, ever, not once. Any meeting, where does the record show, any meeting that took place where I agreed to have Shimko represent me, what terms, where does the record show any terms I agreed to, such as an hourly rate? Where does the record show that a single invoice was ever sent to me? Further, why did Shimko try to get me and the other individual defendants to sign a fee agreement with him in 2003 if he already had one? There is no basis under which I agreed to have him represent me, and would never have done that. Secondly, Mr. Goldfarb, did you retain, you were sued personally, right, in these fraud and RICO cases? Yes. And this was in excess of what, 20, 30, 40 cases, something like that? Yes, sir. Okay. Did you retain other counsel to represent you? Yes, I did. You did have other counsel? Not at the same, not during exactly the same period, but I did along the way. And did Mr. Shimko represent you to some extent in some of these cases? Mr. Shimko was hired by the corporation and represented the corporation. I never knew that I had any obligation to hire another lawyer. Even though you were served at home? Yes. Okay. But that didn't occur to you that you needed a lawyer? No, because the corporation had hired Mr. Shimko, and I relied on that at the time. So you understood Mr. Shimko to be representing your interests at that time? I understood him to be representing the interests of the corporations. Well, but you were sued individually. I was. So who did you believe was representing your individual interests? Again, I thought the corporations were answering on behalf of the individuals. I'm not an attorney. I don't know the legalese, but I can tell you categorically that I never would have hired Mr. Shimko to represent me individually at any point in time. It would have been the last thing I ever would have done. At what point did you hire your own counsel? When it became my – when the discovery portion of the case reached the point that there were – that my deposition was going to be taken and that other individual requirements were being made of me as an individual. Shelly, may I continue? You may continue for another minute. Secondly, his invoices reflect me as being present at two meetings. Over the 18 months that he represented Corf and out of the 25 days that he and his attorneys were in Phoenix, I attended two meetings. That's no surprise since I never went into the office as I did not even have an office there. I used a home office exclusively because that was always our deal that I would have absolutely nothing to do with the operation of the business in any way ever, and I never did. Third, of the hundreds of phone calls over the 18 months that are in the record, my name was mentioned in 11. Five of those 11 seemed to indicate that I was on the phone. Again, I feel five is excessive. But accepting that, there is no reference to where I was, what I said, or for that matter what anybody else may have said. Shimko says his invoices show that I met or telephoned him 15 times. His citation to the record is page 100 to 164, the entirety of his billings. He then goes on to specifically list individual pages by number. However, a quick review does not support his statement. Page 3, there's no phone call with me. There's one about me. Page 6, page 9, page 34, page 35, page 37, page 38, page 12, 19, 31, my name is not even mentioned. The rest is more of the same. There is not one time in his invoices where I contact him directly. I'm a very careful person. I document everything. I always have, my whole life. In 18 months, show me one letter or e-mail that I wrote to Mr. Shimko. There was never one. So I so five supposed phone calls in 18 months and two supposed meetings all in 18 months. From that, Shimko makes me in control of court. Mr. Goldfarb, Mr. Goldfarb, what do you do for a living? Are you a physician? No. What do you do? I'm a business person. I've been involved in business sales. Okay. And if you, if, let's say you provide some kind of a consulting service and you, somebody in a group that you belong to says they're going to provide a service to the group and they do it for you individually and you see that they're doing it for you, whether you talk to them, it's clearly for your benefit. Isn't there a certain element of fairness involved here where whatever else Mr. Shimko may have done or not done, you seem to agree that he represented you individually in some of these lawsuits. Isn't that accurate? To the extent that I've already testified. But, Your Honor, I would, using your example, I would never have put myself in a position in the absence of a written agreement. What I want to know is, what, does not the record show that Mr. Shimko and his firm represented you, perhaps if you have a spouse, I don't know whether she was represented as well, at some point in these sundry lawsuits. Isn't that correct? If he did, it was at the order and instruction of the corporations. But you knew it was going on, right? You didn't say, I don't want you to represent me. No. You did not say that. I didn't say yes and I didn't say no because I never discussed it with him. I never met with him. I worked from my home, Your Honor. But he appeared in court or in depositions purportedly in your name. Did he not? Sir, I don't believe he ever appeared in court or in depositions in my name. Okay. Did he answer any pleadings in your name? I believe he did. Okay. I was included. Did you receive a copy of the pleadings? No. You did not. Did anyone acting on your behalf receive a copy of the pleadings? Never, sir. When Mr. Shimko responded to the lawsuit, then you did not get a copy of his response? To the best of my recollection, absolutely not. Anything further, Mr. Goldfarb? I was just going to add in closing very quickly, and I'm sorry to take so much time from the court. I was talking about from five supposed phone calls in 18 months and two supposed meetings in 18 months. From that, he makes me in control of Korf and a general partner and libel for his supposed $300,000 in fees that I didn't know anything about or never authorized after he was paid almost half a million dollars. So I came to understand I never knew anything about that either. In fact, Shimko never alleged me to be a general partner in his complaint or in his summary judgment response. There's absolutely no evidence that I controlled Korf, and in fact, I did not and never did. I respectfully request that this Court affirm the summary judgment that was awarded to me. Okay. Thank you, Mr. Goldfarb. Thank you, sir. Mr. Shimko, I will afford you one minute if there is something that absolutely needs to be said or clarified. Yes, Your Honor, and I'd like to address this to Judge Smith. You asked about whether or not it would be necessary to plead the four elements of a contract in order to properly plead it. Please remember, Your Honor, the issue of the existence of the contract was not in dispute in this case. They agree a contract existed. I agreed a contract existed. The only dispute was ---- Where in the record did they admit that a contract existed? In their affidavits, Your Honor. They say that CLS and CMS retained it, okay? Okay. My affidavit wasn't necessary to establish the existence of the contract. My affidavit went to establish the identities of the individual with whom I believed I had my contract. And my affidavit clearly states I had my contract with them. They say, oh, no, it was somebody else. And I think that's the dichotomy that should have ended the discussion on the Rule 50 and Rule 56. And does the affidavit from the individual ---- I presume from the individual defendants acknowledge that it was a personal contract with you? No, no, no. What they say, Your Honor, and this is principally you'll get it from Mr. Ross's affidavit, that he's an officer, an owner, that a contract was entered into, but only with CLS and CMS, not with him. Okay. So there is no ---- when your affidavit says that you entered into the agreement with each and every person, that affidavit does not contain the four elements, required elements of a contract, because you're talking about individuals. Right. And their affidavit, by what you're saying, only deals with the contract between you and the corporations and or limited partnerships. Their affidavit just said, yes, there was a contract, but it wasn't with us. That's the difference here, Your Honor. I said the contract was with them. They said, no, the contract is not with us. How can you have a contract if you don't know who the parties are? Well, I did know who the parties were, Your Honor.  Who were the parties? Who were the parties? Well, they were Ross, Goldfarb, Gunther, Woodcock, and their wives. And why did you ask for the guarantee if you already had an agreement? You're just saying it twice. In context, Your Honor, at that time, in January, when my bills went unpaid, I sent them a letter and said, hey, look, you know, I'm off. You're not paying me. You're into me for $200,000 or $300,000. Now, I'm not going to pay you. They asked me, and they said, here's some checks. Hold on to these. We'll pay you. So I stayed on for four more months. I threatened to leave again, and I said, look, the only way I'm going to stay is if you people stay. And it wasn't a fee agreement. It was I wanted them to sign mortgages. But you wanted them to be personally liable, right? No. I wanted mortgages. They were already personally liable. Okay. What I asked for was mortgages so that I would have some security. I thought you asked for a guarantee. Yes. I wanted some security. Is that a call for mortgages? That would be one form of a guarantee. Did you submit to them a form of guarantee that you wanted signed? No. That was a negotiation at that time, Your Honor, for me to continue to go on with the case. And at that time, they said, no, we're not giving you any personal guarantees on this. We're not going to mortgage anything. And, oh, by the way, you're fired. And they also denied that they had personally retained you, right? At that point. At that point, they did, Your Honor. Did you send any responsive pleadings to your individual clients? Yes, Your Honor, I did. Yes. And as for not having met this man, I have been in this man's presence scores and scores of times. I can't count the number of times I've been in this man's presence. But all responsive pleadings you would have sent to your clients, did you send any of them to your clients before they were filed? They would have been discussed before they were filed in personal meetings, Your Honor, when I would have come to Arizona and said, here is the lawsuit, here is what I'm filing. I would have left copies right there. He would have attended those and did attend those meetings. Were you dealing with the general counsel of the corporations? No, Your Honor. I was not. I was dealing with the four individuals. But there was no general counsel of the corporation? They had other. I don't know if they had a general counsel, Your Honor. But they did have other lawyers that were on staff who dealt mostly with regulatory matters. So you didn't have to clear with anybody on the corporations? No, I did not, Your Honor. I did not deal with any of them. Nobody had to prove responsive pleadings or anything? No, Your Honor. I retained local counsel and I followed the Arizona rule by having local counsel review the pleadings. Those pleadings were reviewed before they were filed with the court. Who funded the settlements? There were no settlements. Oh, who funded the settlements? Who funded the settlements? I don't know where the money came from, Your Honor. I know that — I don't know where the money came from. All I know is that I would be given permission to agree to a certain settlement and a check would be made — would be cut, and I wouldn't see it, that I know of. I did not send the checks out. I don't know what accounts they came from. I negotiated the settlement agreements. I turned in the settlement agreements to them and they wrote the checks out of whatever accounts that they took. But you knew Corf was essentially a shell at that point in time? Corf was always a shell. From the moment I walked in, Corf never had any assets. They didn't own anything except some typewriters and some computers, desks and chairs. That's why there was no conflict with CMS and CLS because they were shell corporations and alter egos of these gentlemen who ran them like Florentine princes. Mr. Simcoe, when you became — when you were admitted pro hoc vicee in Arizona, were you aware that you were subject to Rule 1.7, if I understood correctly, from Mr. Cohen? Yes, Your Honor. Of course I did. I read the rules and I got local counsel and I don't know if I ever discussed this issue with local counsel because, quite honestly, Your Honor, I saw no conflict. Now, if this Court sees a conflict, then that ought to go back and be fleshed out. I mean, I think just because there are multiple parties that I — and I often represent multiple parties in my litigation. The existence of multiple parties in a litigation, even in a fraud litigation, does not automatically mean there is a conflict. And there was no conflict until just days before. And I may be wrong because I didn't properly anticipate a conflict. Maybe I can be criticized for that. As you stand before us right now, if you had to do this all over again, would you have gotten written agreements? If I had to do it all over again, Your Honor, I wouldn't have done it. I understand. But if you had gone forward, understanding the rules as you presumably do now, would you have gotten written agreements? Well, Your Honor, I'd have to say that's an unfair question. Hindsight is all 2020. If I hadn't known that this was such a hot issue with you, of course I would have. But from my own personal ethical view of the world, no. I thought I acted properly then. I think I'm acting properly now. I saw no need to get written agreements. Although I will say this. When I retained local counsel, they got written agreements, okay? With you. Not with me. With the other folks. As far as I know, they did, because both of them, and this is the other thing, Your Honor, they all came in and represented these people individually as well, too, local counsel. We had two sets of them. First I had Ganim and Burnidge, and then I had Craig Boats. After they didn't pay Ganim and Burnidge, then Mr. Boats came in. And they were individually retained. I don't know what their agreements were, Your Honor. I only said that if they wanted me to represent them, I had to have local counsel to confer with. They selected Ganim and Burnidge, and they selected Mr. Boats when Ganim and Burnidge stopped being paid. Okay. So, but on that issue of fiduciary duty, Your Honor, I think if that's what's important to this Court, that that is an issue that Judge McTone should address on retrial, whether or not I rightfully should have anticipated a conflict that I did not see exist until the very end, and I acted appropriately as soon as it occurred. I advised all, there's a conflict has arisen, you need other counsel. And, you know, as for the rest of that, Your Honor, I just think that there's on that four elements of the contract, there was never a dispute as to what the contract was. Justice to whom it was with. There was with respect to the individuals, though. Justice to whom it was with. And my affidavit goes right to that point, which said I made the contract with them. And contract 101 says one of the essential elements of the contract is who are the parties. There's a dispute. Right. There's a dispute, and that's why the discussion should have ended in the trial court. They said it wasn't them. They said it was me. I should have been given the opportunity to prove that the contract everybody knew existed was with them. And if you had gone forward to a full trial. Yes, we did. All you were talking about was the contract. And you didn't prove who the parties were. What would happen? Well, don't you think? I think you would. Yes, I would. So if you're looking at the summary judgment and you don't allege the four elements of a contract, meaning in this case who the parties were. No, I did allege that, Your Honor. Okay. I did allege that in my complaint, and I said so in my affidavit. So you just say we've got a conflict here. We've got to go back and prove it. Right. There wasn't any question on what work I had to do. There wasn't any question on how much I was going to be paid. And there wasn't any question as to the time. There wasn't? What was the hourly rate you quoted? $350 an hour, Your Honor. And that was in some written document? It's in all the invoices which they paid for a year, Your Honor. I mean, that was there and they paid it. Okay. There was no dispute. I mean, a meeting of the minds occurred. You know, it might not have occurred at the very beginning, but a meeting of the is not consequential here because those elements were, and they're not sitting here contesting them now. All they're contesting is who was the contract with. And my affidavit goes right to that point. Their affidavit goes right to the opposite point. How is it that Judge Matone chose between them? How could he have legitimately chose between my affidavit that I'm saying, positive, affirmative statement, my contract was with them, and they say, no, it wasn't? And that's the only issue in dispute, not what I did, when I did it, how I was to do it, how much I was to charge. Counsel, I think we understand your position. Thank you very much, Your Honor. All right. Shimko v. Goldfarb is submitted.
judges: Goodwin, Bybee, Seabright